Thank you, Your Honor. May it please the Court, there are two issues before the Court in this case. One is whether the law firm of Baylor & Jackson gave timely notice of a claim to its liability carrier, Minnesota Lawyers Mutual. And the second issue is, even if the claim was untimely, was Minnesota Mutual required under Maryland law to prove that it was actually prejudiced as a result of the timing of the notice. First of all, the notice that was provided by Baylor & Jackson was timely under the terms of the policy and the applicable case law. The policy at issue here required Baylor & Jackson to give, to report a claim, as that's defined in the policy, to Minnesota Mutual. For purposes of this case, a claim is defined in the policy as an act, error, or omission by the insured which has not resulted in a demand for damages, but which the insured knows or reasonably should know would support such a demand. The issue here is that Baylor & Jackson opposed a motion for summary judgment on behalf of its clients. The Court ultimately granted summary judgment and did so on a number of alternative grounds. One of the reasons cited by the Court, the Circuit Court for Baltimore City, is that some of the factual arguments in the opposition were not supported by an affidavit. But the Court listed a number of other alternative grounds for the grant of summary judgment in the state court case. I don't understand why you think, why that matters. Well, the reason it matters is because the policy, Your Honor, states that a claim is defined as an act, error, or omission that the attorney knew or reasonably should have known would support a demand for damages. At the time summary judgment was granted, this alleged error, the lack of an affidavit, would not have supported a demand for damages. The reason is because the damages that were alleged here, the harm to the client, the granting of summary judgment against the clients, would have occurred with or without an affidavit attached to that opposition. And that's essentially expressly stated by the Circuit Court for Baltimore City, lists alternative reasons for the holding. Because there were a number of alternative reasons for the holding, even if there had been an affidavit supporting these few factual allegations that are addressed there, summary judgment would have been granted anyway. In that regard, the case is similar to another recent case in which this Court considered this exact same policy language. And that's the Batsley case from this, the in which the Court expressly said that a reasonable belief by an insured, a reasonable belief that an insured's error caused no harm to the insured's client is relevant to whether an objectively reasonable person in the insured's position would expect his error to give rise to a claim for damages. Right. The opinion was unpublished, but you're right. I mean it did say that, but it's not precedential. Well, I think it's instructive on the objective reasonableness test here, primarily because the Court was reviewing the exact same policy language that we're looking at here. The key under this policy is that not every error by a lawyer has to be reported to the carrier. And as is reflected in Batsley, not every error by a lawyer necessarily is approximate cause of damages to the client. And an attorney's reasonable belief that an error caused no harm to the client is a factor to be considered in the objective reasonableness test of whether a reasonable attorney under the circumstances would have believed that her error would support a demand for damages. And here, it would not for that very reason, for the same reason that was at issue in Batsley. And so, based on that objective, objectively reasonable test, Baylor and Jackson was not, a claim had not arisen at the time of the grant of summary judgment in 2006. It was a very different scenario in August of 2009, or July of 2009, when the Maryland Court of Special Appeals affirmed the grant of summary judgment and did so almost exclusively on the basis that there was not an affidavit attached to the opposition. That's just a red herring. We don't have to worry about the reason. The question is, if I, as a lawyer, got an order where summary judgment was against my client, and the issue, I think a reasonable, objective lawyer would say, oh my God, I'm going to get sued. Well, I think it goes back to the language in this particular policy. And of course, all of these cases are determined based upon the language in the policy. And this was language that was drafted, of course, by Minnesota Mutual. And under the policy language, the mere fact that summary judgment was granted did not obligate them to report a claim. In fact, under the definition of claim, a claim didn't necessarily arise at that time. The question is whether they had committed an error that would support a demand for damages. Every time a lawyer has summary judgment granted against their client, they didn't necessarily commit an error that would support a demand for damages in those circumstances. But was it the district court, it wasn't that any reasonable trial lawyer in Maryland would know the standard for summary judgment motions, and that an un-executed affidavit does not satisfy it? Yes, that's what the district court said in the opinion. So that would, it depends on what, I guess, you consider to be the error. That was, or do you not concede that it was an error not to submit an affidavit? Well, we would say under these circumstances we can assume that it was an error. The issue is not whether it was an error. And the district court pointed out that any reasonable attorney would know what the Maryland rules require regarding attaching an affidavit. And it doesn't, but doesn't the language, I guess, of the policy refer to acts, errors or omissions? And isn't the error, isn't that the error that was pointed out in the district court, that any reasonable trial lawyer would not make that error? Well, yes, the issue is, I mean the district court pointed out that that was the error that's at issue here. Certainly Minnesota Mutual argues that that's the error, and in fact that's the error that ultimately their clients filed suit based upon. The question is whether that is an error that would support a demand for damages at that time, and that's what gets to the harmless nature of the error in the context of the circuit court's opinion in the underlying litigation, the state court's opinion that listing alternative reasons for the summary judgment, meaning even if that error had not been committed, even if there had been an affidavit that was executed and attached, we would have had the exact same outcome of the case. The court would have granted summary judgment. Do we know that? I guess we do, but when we get to, what changes with the Court of Special Appeals when that took the law firm to task for the same reason? What changed at that point is that a reasonable lawyer would understand that to mean that it was much more likely at that point the client would bring an action against them, would bring a demand for damages. That wasn't And that's, I mean, that's exactly why I'm having a bit of a problem. If you were put on notice when the Court of Special Appeals took you to task for the same thing, why would you not have been put on notice when you were taken to task by the trial court? Which was, it was a pretty clear finger-pointing exercise in the trial court. Well I think the trial court opinion was very different when it comes to the notion of taking counsel to task or finger-pointing regarding the affidavit. The summary judgment was very different than the appellate opinion. The appellate opinion was based almost entirely on the lack of an affidavit, whereas the summary judgment opinion can be read to essentially have insulated counsel from liability because of the issue of causation and the trial court pointed out there were a number of reasons, a number of grounds for the holding for the grant of summary judgment, only one of which related to the lack of an affidavit. And the circuit court opinion, based on an objective reading of that opinion, makes it absolutely clear that the judge would have done the exact same thing with or without an affidavit. What was based almost entirely on the affidavit question. And in fact, there was not a suit filed based on the summary judgment. When Baylor and Jackson received the appellate opinion, which clearly laid the summary judgment ruling at the feet of counsel, they immediately contacted Minnesota Mutual. In fact, the same day, July 9, 2009, they received the opinion, they immediately called their carrier. And suit was not filed until after that appellate opinion was issued. But even if we assume that the notice was untimely, Maryland law required Minnesota Mutual in this case to prove that it was actually prejudiced as a result of the timing of the notice here. And that's section 19.110 of the insurance article of the Maryland Code, which says in relevant part, relevant to this case, an insurer may disclaim coverage on liability insurance policy on the ground that the insured has breached the policy by failing to cooperate or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of notice has resulted in actual prejudice to the insurer. In this case, Minnesota Mutual was required to prove actual prejudice. They did not do so. The prejudice that they argue in this case doesn't qualify as actual prejudice under the Maryland case law. And this particular policy, contrary to Minnesota Mutual's argument, falls within those policies that the statute is applicable to. Minnesota Mutual was required to prove actual prejudice here. Their contention is that they were not required to, either because this is a claims made and reported policy or because notice was a conditioned precedent to coverage. So, should we send it back to the district court to make a specific finding? Because it said, the district court specifically said in a footnote, if MLM were required to show prejudice, it could easily have done so by showing it had been excluded from the post-summary judgment and appellate proceedings. Those were the only opportunities MLM could have to fashion a request for relief. The district court seems to have been pretty clear as to its perception that prejudice should be shown. Should we send it back for the district court to make that more clear? No, I don't think a remand would be necessary under these circumstances, simply because Minnesota Mutual here argued that notice was untimely. The law required the insurance carrier to prove that it was actually prejudiced, and it didn't do that. The factors that were cited by the district court in a footnote in its opinion regarding prejudice simply do not qualify as actual prejudice under Maryland law. It was Minnesota Mutual's burden to prove that. They didn't meet that burden. Given that they didn't meet their burden of proof, it wouldn't be appropriate under the circumstances of this case to remand the case to give them a second opportunity to meet their burden of proof. They failed to meet the burden Maryland case law describes very clearly that what is required to prove actual prejudice is a high standard. They had to prove specific ways in which they were impeded in their ability to investigate or defend this case, and they didn't do that. In fact, they did investigate this case. They did defend the case for over a year before disclaiming coverage just weeks before a scheduled mediation and a trial shortly after that. So we would argue that a remand is not appropriate under these circumstances. That was their opportunity. Minnesota Mutual filed this case. They moved for summary judgment. It was their burden to meet, their burden of proof. They didn't do that, and we would ask the court to reverse the judgment of the circuit court based either on the timing of the notice or on the fact that Minnesota Mutual failed to prove actual prejudice. Thank you. Good morning. May it please the court. My name is Paul Farquharson, and I'm here representing Appalese Minnesota Lawyers Mutual. I apologize for the binders. I'm afraid that I have become a bit of a dinosaur today when it comes to these sorts of things. I'm still feeling gratitude to you for pronouncing your name so that I didn't have to try to. If you hear it before you see it, it's a lot easier. There are a lot of letters in there we don't pronounce. I'd like to begin, if I may, by trying to clarify some language that was used in counsel's argument. And our briefs were, I think, fairly clear and deliberate in our use of the language. This is not so much a late notice case as it is a trigger case. The policy at issue is a claims made and reported policy. So in order for the policy to respond to any claim, the claim must be made, and there are provisions about what constitutes a claim. A claim must be made and reported. At that point, the policy responds. A claim can be reported during the policy period and still be untimely and still be late. And in fact, the policy at issue has just such a late notice provision. That late notice provision states, in the event of a claim, disciplinary action, disciplinary investigation, or notice to appear before a review board, the insured must, one, give immediate written notice to us, and two, forward every demand. And it goes on. Let's talk about where those demands must be forwarded. And I think the facts of this case give us an excellent opportunity to see how the statute can apply to a claims made and reported policy, but it applies to the notice provision, not to the triggering provision. So in this case, the policy period runs from August 1 to August 1. The hearing before Judge Kaplan was on August 17 of the first policy year, the 2006-2007 policy year. I'm sorry, the hearing was on August 17. The opposition was filed on August 11, and the decision came down on August 22. So everything transpired very closely in time in August. The policyholders had until nearly October 1 of the following year to report that claim. And had they reported that claim, the 2006 policy would have been triggered. And then Minnesota Lawyers Mutual would have had to respond and address the claim. Had they waited until October of 2007 or the very end of September of 2007 to report the claim, they could have been seen to have violated the notice provisions. And the notice provision, which I just read to you, states that notice must be given immediately. So they could have And it's that argument, if Minnesota Lawyers Mutual were trying to raise it, it's that argument which would be subject to the 1910 statute requiring prejudice. It's not the argument that they failed to report. That's a trigger argument. And that never occurred. It's as if an auto accident for an auto policy didn't happen during the policy period. This policy requires for it to be triggered, that a claim be made, and that it be reported. If those things don't happen, the policy isn't triggered. It never arises. Section 19110 doesn't apply. What if we find that section 19110 does apply? How have you shown actual prejudice? We submitted an affidavit from the adjuster, and we made an argument in taking steps to assist in the appeal or to assist in reconsideration. We contend that plenty of evidence was submitted that we did meet our burden with respect to actual prejudice. Judge Berdard didn't reach it. His footnote identifies the prejudice that we showed. But he didn't need to reach it because he found that we didn't have to demonstrate prejudice. So it's not that we didn't meet our burden. It's that Judge Berdard didn't reach it. So in responding to maybe the next anticipated question, if you find that actual prejudice must be shown, then we do think you must remand for Judge Berdard to be able to enter that finding. Now, if I may address counsel's argument regarding whether a reasonable attorney would have perceived the potential for damages arising out of the failure to submit an affidavit. We concur with Judge Berdard's decision in that regard, that there was plenty of indication by Judge Kaplan that the attorneys involved in the case committed an error and that that error was such that it could and in fact ultimately did prejudice their client. Specifically, simply because there are multiple opportunities to rule against your client, the malpractice that occurred precluded an appeal on the merits. Because they failed to submit the affidavit, because they failed to submit any factual information at all in support of their opposition to motion for summary judgment, that failure, that error right then and there in 2006 was apparent to any reasonable attorney that an appeal on the merit could be precluded. And that is precisely what happened. On appeal, the Court of Special Appeals did not reach the merits. It found that it did not have to and that the failure to supply an affidavit was sufficient reason to affirm Judge Kaplan's decision. Well, tell me, distinguish Batsley then, our unpublished opinion in Batsley. Your argument sounds rather like the dissent's view in that case. Well, Batsley, recall Batsley was after a full trial on the merits. There was a jury in Batsley and the jury found that it was reasonable for the attorney in that case, the attorney's failure in that case. I believe if I recall the facts in Batsley, the attorney failed to include certain property in a divorce settlement agreement. And the testimony was that the wife in that case would never have agreed under any circumstances to include that property in the written settlement agreement. We take issue with some of the sweeping language in Batsley regarding the subjective nature and we suggest to the court that under Maryland law, under Maryland law, the standard, the proper standard is a reasonable attorney. What a reasonable attorney would understand to give, to be, understand an error that could give rise to a demand for damages. And keep in mind that under to be certainty of the result. And as Judge Berdari indicated in his opinion, lawyers lose all the time. On every case, a lawyer wins and a lawyer loses. In few of those cases is there an error that rises to the level of something that might give rise to damages. And in this case, it was clear. You've all seen opinions from trial judges as have I. This is a rare example of a trial judge admonishing counsel for their failure. Unless there are other questions, that's all that I have. I have one question. So if it was so clear that this would have given rise to a claim, in the first instance, with the first court opinion, why did it take the insurance company over a year to apparently recognize that and disclaim coverage? The process by which these claims come through is a complicated one. For example, the notice, the first notice that the insurance company had was of the appellate court decision. That's the first time they heard about this. The adjuster looking at the appellate court decision says, oh my goodness, this is a problem. This is their first indication that Baylor and Jackson knew about it. They didn't appreciate what had happened three years earlier. They didn't have any information about that. So they process that claim, they do what they're supposed to do, and they defend the claim. They then rely upon defense counsel to defend the claim, to develop the discovery, and they review that. About three to six months into the litigation, as the discovery was proceeding, information comes to the insurance company. Red flags begin to be raised. They have to refer the coverage issue to another group. They can't have the agent or the claims handler handling the defense can't be making coverage decisions. So then they have to take that whole file, give it to another adjuster to review and to make that decision. The adjuster makes a recommendation, and then they seek legal advice and legal counsel. So it did take some time, but I would suggest that that falls into the category of no good deed, possibly going unpunished at this point. Thank you very much. Your Honor, counsel started by describing this case as a trigger case, not a notice case. It's very different than the way he described it in his letter alerting our clients that Minnesota Mutual was disclaiming coverage, which is at page 339 of the joint appendix. I was simply going to point out, Your Honor, that in the original letter disclaiming coverage, Minnesota Mutual specifically said that the notice of the claim was not given timely. The claim was not reported timely. I think you're reaching a point that I was going to ask you about, and that is deciding whether 19-110 governs. And the district court referenced THE insurance versus TTP, in which apparently the court held that the statute only policy has expired. Before a claim is made, there is no longer any policy to be breached and no potential for coverage. Please help me understand how you reconcile that language with these facts. Certainly. In THE, it really goes to the issue of how a claim is defined in a receiving notice of an action or an allegation brought against it. In this case, claim is defined very differently. Here, claim is defined, again, as an act, error, or omission that counsel knew or reasonably should have known would support a demand for damages. Now, under Minnesota Mutual's argument here and under the district court's holding, the claim occurred at the time summary judgment was granted. It's a separate issue as to when that claim was reported and whether that was a breach of the policy. What Minnesota Mutual is really arguing here is that the requirement that a claim be reported to the insurer is the act that triggers coverage in the first place. That's the argument that's being made. And it simply does not comport with the language of the policy and is also essentially irrelevant under the decision of the Maryland Court of Appeals in the Sherwood-Brands case. Under the language of the policy, there's a provision in the policy that specifically defines coverage. It's at page 284 of the joint appendix. And it defines coverage as that Minnesota Mutual provides coverage for damages due to any claim. There's no reference in that coverage provision to reporting a claim. This is not a claims made and reported policy. It's a claims made policy. It says at the top of it, it's a claims made policy. It says on the application, this is a claims made policy. Reporting a claim is not the act that triggers coverage. The claim is the act that triggers coverage. The reporting of a claim is an entirely separate requirement, which whether even if it's couched as a conditioned precedent to coverage under the Sherwood-Brands decision from the Maryland Court of Appeals, it's irrelevant whether it's a conditioned precedent or whether it's a covenant. There, the Court of Appeals clarified Maryland law on the application of the statute and specifically said that the effect of the statute is to mandate that a notice provision like this is treated as a covenant and not as a condition. So in fact, in Sherwood-Brands, the notice provision was expressly described as a condition in the policy. And the court still said by statute, it's deemed a covenant, not a condition. The same is true here. There's no principal difference between the policy the Court of Appeals of Maryland was looking at in Sherwood-Brands and the policy that's here. There's coverage for a claim. Separately, there's a requirement that the claim be reported within a certain amount of time. And under those circumstances, under Sherwood-Brands, the statute does apply. They were required to prove actual prejudice. They didn't do that. The Maryland case law says that the requirement of actual prejudice means that an insurer may not disclaim coverage on the basis of prejudice that's only possible, theoretical, conjectural, or hypothetical, nor is it enough to surmise harm that may have occurred by virtue of the passage of time. Their argument here is purely theoretical, it's purely hypothetical, and it's essentially an argument that merely because time had passed, they were somehow prejudiced as a result of the timing of the reporting here. That's not sufficient under Maryland law. If it was sufficient, it would render the prejudice statute effectively meaningless, that it was their burden of proof to prove that, they didn't do it, and we would ask the court to reverse the judgment and to not give them a second chance to attempt to meet their burden. And so we're asking the court to reverse the judgment of the district court in this case. Thank you. Thank you very much.
judges: Allyson K. Duncan, Henry F. Floyd, Stephanie D. Thacker